UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF INDIANA, INDIANAPOLIS DIVISION

| | |
|---|---|
| STEVEN DANIEL, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| vs. | ) CAUSE NO: 1: |
| | ) |
| AT&T COMMUNICATIONS OF INDIANA, INC. D.B.A. AT&T INTERNET SERVICES, INC. | ) 1:14-cv-0871 SEB-DKL |
| | ) |
| DEFENDANT. | ) |

May 28, 2014

## COMPLAINT AND DEMAND FOR JURY TRIAL

### I. Nature of the Case

1. The plaintiff, Steven Daniel, who has multiple disabilities, brings this action against his former employer, AT&T Communications of Indiana, Inc., D.B.A. AT&T Internet Services, Inc., ("AT&T"), alleging that it violated Title III of the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. §§ 12181-12189 by discriminating against him due to his disability, by failing to accommodate his disability, by disclosing confidential medical information, by retaliating against him for engaging in protected activity, and by intentionally inflicting emotional distress.

### II. Parties

2. Daniel is a resident of Marion County and was an employee of AT&T, as contemplated by the ADA, until AT&T terminated his employment.

3. Defendant, AT&T, is a for-profit corporation doing business in Indianapolis, Indiana, Marion County.

4. AT&T is an "employer" as that term is defined by 42 U.S.C. § 2000e.

### III. Jurisdiction And Venue

5. This Court has jurisdiction over this action pursuant to *28 U.S.C. § 1331 and § 1343(a)* and *42 U.S.C. § 2000e-5*, as amended.

6. Venue is proper pursuant to *28 U.S.C. § 1391(c)* as AT&T conducts business in this District.

7. At all times relevant to this action, Daniel was an "employee" as that term is defined by *42 U.S.C. § 2000e(f)*.

8. Daniel satisfied his obligation to exhaust administrative remedies, by timely filing a charge of discrimination (Charge No. 846-2013-24448) with the United States Equal Employment Opportunity Commission (hereinafter "EEOC") alleging discrimination on the basis of disability discrimination, failure to accommodate his disability, disseminating confidential medical information, and retaliation. Daniel received his Notice of Right to Sue from the EEOC and brings this original action within ninety (90) days of receipt thereof.

9. All facts, events, and transactions giving rise to this lawsuit occurred within the geographic environs of the Southern District of Indiana; thus, venue is proper in this Court.

## IV. Factual Allegations

10.

11. Daniel experiences Panic disorders without agoraphobia including Post traumatic disorder, which causes hypertension, hyperventilation, and "blacking out". He also contracted H1N1 influenza virus. His disabilities alter the manner in which he processes information and his ability to manage stressful situations. His psychological disability results in periods of severe depression and anxiety. He receives ongoing medial supervision to manage the disability. His disability requires accommodation in order for him to fully participate in the workplace

12. Due to his disability, Daniel is substantially limited in the major life activities of learning, thinking, concentrating, reading, and sleeping. These limitations require reasonable accommodations in order for him to perform his job at the workplace.

13. AT&T was aware of Daniel's disabilities and the necessary accommodations through medical documentation provided by Daniel's doctor.

14. Daniel was hired by AT&T on January 14, 2013 into DSL Support.

15. His employment began with a training program, which he completed successfully.

16. One week prior to the completion of the training program, Daniel contracted H1N1 influenza virus while at the workplace.

17. State and Federal departments of Occupational Safety and Health investigated numerous violations concerning the outbreak of the H1N1 influenza virus at the AT&T facility.

18. Daniel's supervisor and other members of AT&T management shared confidential information about Daniel's medical condition with members of Daniel's training class.

19. Daniel's Supervisor repeatedly teased Daniel about his condition, calling him names and making jokes to members of the training class.

20. By way of example, on May 2, 2013, Jon Robling stated to another employee "Looks like H1N1 isn't here today. Maybe I should use a different nickname."

21. During his graduation ceremony from the training program Brian Mobley refused to shake Daniel's hand and stated that he would not touch him. This was in front of the entire training class. Daniel was cleared to work by a doctor at this time.

22. Rich Berenger disseminated in writing Daniel's condition to employees who had no need of the knowledge.

23. AT&T disciplined Daniel for absences related to his condition.

24. Daniel complained through the grievance process and directly to his supervisors of the harassment, discrimination , breach of confidentiality, and failure to accommodate.

25. Members of AT&T management also treated Daniel with shocking contempt given his disabilities.

26. In one incident, Daniel was on the phone with a customer doing his job. The customer overheard Daniel's coworkers using sexually explicit language and the customer launched a complaint. The complaint was not about Daniel.

27. Daniel's supervisors blamed Daniel for the incident and aggressively questioned him about how he handled the incident.

28. Daniel began exhibiting signs of a panic attack. He was removed to a small room where Brandy Brigs continued to question him about the incident.

29. Daniel requested quiet time to allow his medication to take affect. Ms. Brigs continued her questioning.

30. He was then informed that he had to leave work and go to the hospital. He was given the option of calling an ambulance or "save $500.00" and call his wife for a ride.

31. Upon his return to work, Daniel was disciplined for leaving work.

32. Daniel again complained through the grievance process and directly to management about the harassment, discrimination , and failure to accommodate.

33. In or about April of 2013, Daniel noticed that credits were being taken off of his AT&T consumer bill. After numerous phone calls and his own investigation, he learned that an AT&T employee in executive management was responsible for the deletions.

34. The AT&T employee accessed Daniel's personal consumer account twenty-one (21) separate times. Each incident was during Daniel's employment with AT&T and after Daniel complained of harassment, discrimination, breach of confidentiality, and a failure to accommodate.

35. Daniel complained to AT&T about the illegal deletions.

36. Daniel was then interrogated by an AT&T Asset Protection investigator, who continued to question Daniel long after Daniel requested a break due to concerns over another panic attack.

37. The AT&T investigator informed Daniel that he either had to answer his questions or Daniel would have to leave the building.

38. Soon thereafter, Daniel experienced another panic attack, passed out, and hit his head while falling.

39. His injuries due to the fall included a severe concussion, a back injury, and mental anguish requiring hospitalization and medical care that continues through present.

40. The employee from executive management, who accessed Daniel's personal consumer account, was subsequently terminated.

41. Daniel filed his Charge of Discrimination with the Equal Employment Opportunity Commission on May 9, 2013, complaining of harassment, discrimination based on his disability, failure to accommodate, and illegal dissemination of confidential medical information.

42. On May 31, 2013, AT&T provided Daniel with a letter threatening termination of employment based on absences caused by AT&T's own hostile conduct.

43. On July 10, 2013, AT&T followed through on its threat and terminated Daniel's employment.

44. The reasons provided by AT&T to terminate Daniel's employment were pretextual.

45. But for AT&T's failure to accommodate Daniel's disability, blatant discrimination, and unconscionable harassment, Daniel would still be employed by AT&T.

46. Daniel received positive performance reviews until he contracted H1N1 influenza and the harassment and discrimination commenced.

47. Daniel complained to several members of management about the disability discrimination, harassment, dissemination of confidential medical information, and failure to accommodate.

48. The harassment and discrimination intensified after Daniel complained and subsequently filed his charge of discrimination with the EEOC.

49. AT&T's actions were intentional, willful and in reckless disregard of Daniel's rights as protected by Federal law.

50. Daniel was and continues to be economically, physically, and emotionally harmed by AT&T's discriminatory and harassing actions.

## V. Count I: Discrimination under the Americans with Disabilities Act

51. Daniel hereby incorporates paragraphs one (1) through fifty (50) of his Complaint herein.

52. Daniel experiences Panic disorders without agoraphobia including Post traumatic disorder, which causes hypertension, hyperventilation, and "blacking out". He also contracted H1N1 influenza virus. He is limited in the major life activities of learning, thinking, concentrating, and sleeping. These limitations require reasonable accommodations in order for him to perform his job at the workplace. Accordingly, he is considered to have a disability under the Americans with Disabilities Act.

53. Daniel satisfied AT&T's work requirements.

54. AT&T violated the ADA by terminating Daniel's employment and discriminating against him due to his disability.

55. AT&T treated Daniel less favorably in the terms, privileges, and conditions of his employment than similarly-situated coworkers.

56. AT&T's actions were intentional, willful, and/or undertaken in reckless disregard of Daniel's rights as protected by the ADA.

57. Daniel has suffered damages as a result of AT&T's unlawful actions.

## VII. Count II: Retaliation under the ADA

58. Daniel hereby incorporates paragraphs one (1) through fifty-seven (57) of his complaint herein.

59. Daniel's Charge of Discrimination with the EEOC, filing internal grievances, and complaints to members of AT&T's management constituted protected activity.

60. Similarly-situated employees who did not engage in protected activity were treated more favorably in the terms, privileges, and conditions of their employment.

61. AT&T unlawfully retaliated against Daniel because he engaged in protected activity.

62. AT&T acted with intent, malice, and or reckless disregard as to Daniel's legal rights under the ADA.

63. Daniel was harmed as a result of AT&T's conduct.

## VIII. Count III: Failure to Accommodate under the Americans with Disabilities Act

64. Daniel hereby incorporates paragraphs one (1) through sixty-three (63) of his complaint herein.

65. Daniel has a disability, as defined by the ADA.

66. Daniel informed AT&T of his disability and AT&T was aware of his need for an accommodation.

67. AT&T refused to accommodate Daniel's disability and willfully exacerbated his condition through its conduct.

68. AT&T terminated Daniel's employment after depriving him of the accommodation.

69. Daniel was harmed as a result of AT&T's conduct.

### IX. COUNT IV: Confidentiality Violations of the ADA

70. Daniel hereby incorporates paragraphs one (1) through sixty-nine (69) of his complaint herein.

71. Daniel provided confidential medical and disability-related documents to the appropriate officials of AT&T.

72. AT&T's employees had access to confidential medical and disability-related information concerning Daniel's condition.

73. AT&T employees disseminated the confidential medical and disability-related information to certain employees of AT&T who had no need to be aware of Daniel's condition.

74. AT&T employees specifically identified Daniel when discussing the H1N1 influenza virus outbreak at AT&T.

75. AT&T acted with intent, malice, and or reckless disregard as to Daniel's legal rights under the ADA and federal law.

76. Daniel was harmed as a result of AT&T's conduct.

### X. Count V: Intentional Infliction Of Emotional Distress

77. Daniel hereby incorporates paragraphs one (1) through seventy-six (76) of his complaint herein.

78. AT&T acted intentionally or recklessly in the treatment and harassment of Daniel by ignoring his complaints, exacerbating his condition through unconscionable interrogation, belittling his need for accommodations, and publically joking about his medical condition.

79. AT&T's conduct was extreme and outrageous.

80. AT&T's acts were and are the cause of Daniel's distress.

81. Daniel suffers severe emotional distress as a result of AT&T's conduct, requiring medical attention and ongoing treatment.

### Relief Requested

WHEREFORE, Plaintiff, Steven Daniel, requests that this Court find in his favor and provide him with the following relief:

A.  Enjoin AT&T from engaging in further violations of the ADA;

B.  Order AT&T to rehire Daniel with all commensurate compensation, benefits and seniority or payment of front pay in lieu thereof;

C.  Order AT&T to pay to Daniel wages, benefits, compensation, and all monetary loss suffered as a result of Defendant's wrongful and unlawful actions in an amount that will make him whole;

D.  Order AT&T to pay to Daniel liquidated damages;

E.  Order AT&T to pay to Daniel compensatory and punitive damages;

F.  Order AT&T to pay Daniel's costs and attorney fees incurred in litigating this action;

G.  Order AT&T to pay to Daniel pre- and post-judgment interest on all sums recoverable; and

H.  Order AT&T to provide to Daniel any and all other legal and/or equitable relief that may be just and proper.


Respectfully submitted,


/s Michael S. Dalrymple

Michael S. Dalrymple, (23539-53)

Michael S. Dalrymple, Attorney at Law

1847 Broad Ripple Avenue

Suite 1A

Indianapolis, Indiana 46220

(317) 614-7390

michaeld@dalrymple-law.com

Attorney for Plaintiff, Steven Daniel

**DEMAND FOR JURY TRIAL**

The Plaintiff, Steven Daniel, by counsel, respectfully requests a jury trial as to all issues deemed so triable.

Respectfully submitted,

/s Michael S. Dalrymple
Michael S. Dalrymple, (23539-53)
Michael S. Dalrymple, Attorney at Law
1847 Broad Ripple Avenue
Suite 1A
Indianapolis, Indiana 46220
(317) 614-7390
michaeld@dalrymple-law.com
Attorney for Plaintiff, Steven Daniel

## CERTIFICATE OF SERVICE

I certify that on the twenty-ninth day of May, 2014, I served the foregoing via U.S. Post.

/s Michael Dalrymple
Michael Dalrymple, #23539-53